UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES E. HELBERG                                                                                            PLAINTIFF

V.                                          No. 3:22-CV-00293-BBM

MARTIN O'MALLEY[1], Commissioner,
Social Security Administration                                                                     DEFENDANT

## ORDER

**I.     INTRODUCTION**

On March 20, 2019, Plaintiff James E. Helberg ("Helberg") applied for supplemental security income, alleging that he became disabled on October 31, 2010; Helberg later amended his alleged onset date to March 20, 2019. (Tr. at 11). The application was denied at the initial administrative level and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued a written decision, finding that Helberg was not disabled. (Tr. at 11–23). The Appeals Council denied Helberg's request for review of the ALJ's decision on October 7, 2022. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Helberg has requested judicial review. For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2] The parties consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 4).

## II.   THE COMMISSIONER'S DECISION

The ALJ found that Helberg had not engaged in substantial gainful activity since the application date of March 20, 2019.[3] (Tr. at 13). At Step Two, the ALJ determined that Helberg has the following severe impairments: degenerative disc disease of the cervical and thoracic spines, obesity, depression, generalized anxiety disorder, post-traumatic stress disorder, mood disorder, dependent personality traits, schizoaffective disorder, and multiple sclerosis. (Tr. at 13–14).

At Step Three, the ALJ determined that Helberg's impairments did not meet or equal a listed impairment. (Tr. at 14–16); *see* 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.920(d), 416.925, and 416.926). Before proceeding to Step Four, the ALJ determined that Helberg had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) no more than frequent climbing of ramps and stairs; (2) no more than frequent balancing, stooping, crouching, kneeling, crawling; (3) no climbing of ladders, ropes, or scaffolds; (4) avoid exposure to excessive vibration; (5) no more than frequent overhead reaching bilaterally[4]; (6) can make simple work-related decisions and can maintain concentration, persistence, and pace for simple tasks; (7) can

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[4] This may be an error as the remaining record suggests a limitation on reaching bilaterally. *See* (Tr. 18) ("These records further support a *limitation* on exposure to vibration and overhead reaching bilaterally.") (emphasis added).

2

understand, carry out and remember simple work instructions and procedures and can adapt to changes in the work setting that are simple, predictable, and can be easily explained; (8) can have occasional interaction with co-workers and supervisors; and (9) can have occasional interaction with the public. (Tr. at 16).

At Step Four, the ALJ determined that Helberg was capable of performing past relevant work as an assembler. (Tr. at 22). Further, the ALJ relied upon testimony from a Vocational Expert ("VE") to determine that, based on his age, education, work experience, and RFC, Helberg was capable of performing work in the national economy. (Tr. at 22–23). Therefore, the ALJ concluded that Helberg was not disabled. *Id*.

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Helberg's Arguments on Appeal

Helberg contends that the evidence supporting the ALJ's decision to deny his application for benefits is less than substantial. Specifically, Helberg argues: (1) the ALJ erred at Step Three; (2) the ALJ did not fairly evaluate his subjective complaints; (3) the ALJ failed to fully develop the record; and (4) the ALJ erred at Step Five.

#### 1. Analysis at Step Three

Step Three requires the ALJ to determine whether the "impairment (or combination of impairments) met or equaled a listed impairment." 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). At Step Three, the burden rests squarely on the claimant to prove he met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that his impairment matches all of the specified medical criteria of a listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Helberg has multiple sclerosis that he alleges is disabling. He asserts that he met Listing 11.09 (Multiple Sclerosis) and should have been found to be disabled at Step Three. Listing 11.09 for multiple sclerosis requires that a claimant show:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.
>
> OR
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.09, (https://www.ssa.gov/disability/professionals/bluebook).

The ALJ explained why Helberg did not meet Listing 11.09, and the record supports the ALJ's conclusion. For example, Helberg responded well to Copaxone injections for multiple sclerosis. (Tr. at 14, 604, 644, 786). Treatment notes showed that multiple sclerosis was "[s]table as evidenced by [n]o relapse of symptoms." (Tr. at 786, 668–670). Helberg could walk normally and, although exams showed he had a slightly abnormal gait, he could perform a variety of daily activities. (Tr. at 17–18, 327–331). Helberg said treatment was helpful. Helberg has not shown that his impairment matches all of the specified medical criteria of Listing 11.09. Thus, his Step Three argument fails.

### 2. Helberg's Subjective Complaints

Helberg next asserts that the ALJ erred in his evaluation of Helberg's subjective complaints. When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "[A]n ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

The ALJ discussed Helberg's ability to attend to personal care, walk five to ten blocks, help his aunt, fix daily meals, shop in stores, and manage his own money. (Tr. at 21, 327–331). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 966–967 (8th Cir. 2003). The ALJ discussed objective imaging of Helberg's impairments, which showed no more than moderate conditions. (Tr. at 14, 21, 699–704). Helberg treated his pain conservatively; for example, he used Ibuprofen and a brace for his knee. (Tr. at 18). As for mental impairments, Helberg did seek psychiatric care, but showed improvement while on medication. (Tr. at 19, 709–710). His provider noted fair prognosis with good progress in therapy. (Tr. at 742–749). His provider also observed good attention span and judgment and clear speech on multiple occasions. (Tr. at 710–711, 715–716, 723–724, 727–728, 737–738, 751).

The ALJ also discussed the medical opinions. A mental consultative examiner found that Helberg was able to perform most mental work functions without issue. (Tr. at 20, 684–691). The ALJ considered an opinion from Helberg's treating APN, who stated that Helberg could not work due to health conditions. (Tr. at 20–21, 537). The ALJ found this opinion to be unpersuasive because the APN's notes did not suggest disabling conditions. (Tr. at 20–21, 566–567). The ALJ also assessed the non-examining medical experts' opinions that Helberg could perform light work with no additional limitations. (Tr. at 16, 109–152). The ALJ, crediting some of Helberg's subjective complaints, assigned an RFC more restrictive: for light work with additional postural limitations. (Tr. at 16). The ALJ also limited Helberg to work of a simple nature. *Id*.

The ALJ thoroughly considered and evaluated Helberg's subjective complaints in conjunction with the record as a whole. As the ALJ checked off the required factors for that analysis, he found that Helberg's complaints were not entirely consistent with the balance of the record. (Tr. at 17). The Court finds no error in the ALJ's consideration of Helberg's subjective complaints.

### 3. Development of the Record

Helberg urges that the ALJ should have further developed the record before issuing an opinion. An ALJ has a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–831 (8th Cir. 1994). It is well-settled, however, that a claimant has the burden of proving his disability; the ALJ does not have to play "substitute counsel" for the claimant, and the ALJ's duty to develop is not never-ending. *Id* at 830. The ALJ is required to recontact a treating or consulting physician or order further testing only if the

medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926–927 (8th Cir. 2011) (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)) The record did not contain any gaping holes or glaring inconsistencies that would have warranted further examinations, which the ALJ specifically outlined in his decision.[5] Helberg has not shown that further development of the record was required.

### 4. Analysis at Step Five

Finally, Helberg asserts that the hypothetical questions posed by the ALJ at Step Five and the corresponding RFC did not fully incorporate his limitations. Any hypothetical question posed by the ALJ "need only include those impairments and limitations found credible by the ALJ." *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (citing *Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004)). "A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008)). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003). As discussed above, treatment was

---

[5] The ALJ noted at the outset of his decision, "The claimant, through his representative, moved to leave the record open for further development and additional physical and mental consultative examinations. I deny this motion, as the record of evidence is complete and there are no ambiguities in the record. Further, the claimant's last psychological examination was completed in December 2019; two medical consultants have reviewed the record of evidence; the procedural history for this claimant includes prior administrative law judge, appeals council and district court denials; consultative examinations included in the record document malingering; and the claimant's activities of daily living do not support the need for additional examinations." (Tr. at 11).

conservative, clinical exams did not show disabling conditions, medication helped Helberg's conditions, and he could perform a variety of daily activities. (Tr. at 16–22). The ALJ fully discussed these factors and framed a hypothetical based on his analysis. (Tr. at 67–69). The ALJ explained how he arrived at the RFC,[6] which incorporated all of Helberg's credible limitations. (Tr. at 16–22). The ALJ did not err at Step Five.

## IV. CONCLUSION

There is substantial evidence to support the Commissioner's decision to deny benefits in this case. The ALJ properly analyzed Helberg's subjective complaints, and the RFC incorporated all of Helberg's credible limitations. The ALJ did not err at Steps Three or Five, and the record was fully developed. The finding that Helberg was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

DATED this 19th day of March, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] The ALJ noted in his opinion, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. at 17).